## Foresters' Building and Loan Association v. Henry Quinn.

### Gen. No. 11,905.

1. SHARES OF STOCK—*when re-issuance of, cannot be questioned.* Where an association had ample authority to re-issue shares of stock, the party to whom the same were issued cannot raise the question of an abuse of power.

2. SHARES OF STOCK—*when re-issuance of, valid.* Where shares of stock in an association are not purchased at the time they were first offered for sale, and were not paid for in installments, but were purchased at a later date and paid for in full, the transaction is valid.

3. ASSUMPSIT—*when lies to recover for money had and received.* The action to recover money paid by the plaintiff to the defendant, is an equitable action, and only lies when, in equity and good conscience, the defendant should repay the money.

4. ESTOPPEL—*when operates to preclude action for money had and received.* Where a shareholder in an association has voted his shares in favor of the liquidation of such association and has accepted dividends on account thereof, after liquidation, he is estopped to maintain an action for the recovery of the money paid for such shares.

Action of assumpsit. Appeal from the Superior Court of Cook County; the Hon. MARCUS KAVANAGH, Judge, presiding. Heard in this court at the October term, 1904. Reversed. Opinion filed April 10, 1905.

A. F. TEEFY, for appellant.

EDMUND S. CUMMINGS, for appellee.

MR. JUSTICE ADAMS delivered the opinion of the court.

This is an appeal by appellant from a judgment recovered by appellee for the sum of $602.43. The cause, by agreement of the parties, was tried by the court, without a jury, on the following stipulation of facts:

"Stipulation and agreement that the following facts are true, and may be considered by the court upon the trial of this cause, the same as though proved by competent evidence produced in open court upon the trial.

(1) The Foresters' Building and Loan Association is a corporation duly organized and existing under and by virtue of the building. and loan association laws of the State of Illinois, and for many years immediately preceding the appointment of liquidators, as hereinafter stated, it carried on the business of a building and loan association in Cook county, Illinois; and it issued series of stock in series of three months each and payments upon said stock were made by its members at the rate of 50 cents a month on each share of stock.

(2) That on the 1st day of July, 1889, the said association opened its twelfth series of stock and issued shares of stock in said series until and including the 30th day of September, 1889, on which day it closed the sale of shares in said series and on the 1st day of October, 1889, opened its thirteenth series of stock.

(3) That on or about the 9th day of July, 1889, Catherine Brown became the owner of 13 shares of said twelfth series of stock and so remained as the owner thereof, paying her monthly dues thereon as provided by the laws of said association until on or about the 6th day of March, 1894, at which date she surrendered her said shares of stock to the said association and received from said association the amount of money paid in by her to that date upon said shares of stock, and in addition thereto, the sum of $76.05 as and for interest upon the money so paid in by her for the average time that said money had been received by the said association.

(4) That from the 6th day of March, 1894, until on or about the 8th day of September, 1898, said surrendered shares of stock had never been reissued by said association to any other person, and nothing had been paid to or received by said association on said shares of stock, and on the 8th day of September, 1898, the plaintiff herein applied to said association for the purchase of 24 shares of stock in the twelfth series thereof, and said association issued to him 24 shares of stock of said twelfth series, of which 24 shares of stock, the said 13 shares of stock were

a part, and the remaining 11 shares in said twelfth series were shares which had been issued to some other parties and withdrawn by them as in the case of said 13 shares originally purchased by said Catherine Brown; and when said shares of stock were issued to the plaintiff, the secretary of the defendant association estimated the amount of dues which would have been paid in on said 24 shares of stock, had they been duly and regularly issued by the association at the time said twelfth series was opened for sale of stock therein and regular payments had been made thereon from that time until September, 1898, and which sum amounted to $1,356. And he also estimated the amount of premium which would have been earned by said sum of $1,356 during the period aforesaid, fixing the sum at $678.48, and the plaintiff herein accordingly paid to the defendant association for said shares of stock the sum of $1,356 as dues and $678.48 as earned premium.

(5) The difference between the earned premium charged by the defendant association to the plaintiff and the amount paid out by it to Catherine Brown as interest on dues paid in by her, is $602.43, and is the net amount actually had and received by the defendant association, and that the total of $2,034.48 was the withdrawal value of said 24 shares of stock in the twelfth series, at the time said plaintiff purchased the same. The above mentioned sum of $678.48 had not been paid into the association until so paid by the plaintiff when he purchased said shares in September, 1898, when said association reissued said 24 shares in the twelfth series thereof. That said sum of $678.48 so paid, as aforesaid, by said plaintiff, was apportioned among all existing shares of the twelfth series, including said 24 shares thereof so purchased by the plaintiff. That from the time of said purchase up to the date of liquidation, all profits of said association were apportioned quarterly to and among the shares of stock existing, including said 24 shares of the twelfth series so purchased, as aforesaid. That the number of shares in said twelfth series issued originally was not increased after said series was closed.

(6) That on the 14th day of May, 1900, the stockholders of said association duly placed the same in a state of voluntary liquidation, and James H. Burke, William H. Burke and Hugh Cullen were the voluntary liquidating committee, who duly qualified as such committee, entered upon the duties of their office, and are now engaged in liquidating said association, according to the statutes in said case made and provided.

(7) The plaintiff voted his twenty-four shares of stock at said meeting of the stockholders of said association, called for the purpose of passing upon the question of liquidation, in favor of liquidation, and has since that time received and accepted dividends of the shares of stock aforesaid, aggregating not less than sixty per cent of the amount of the dues paid in by him on said shares of stock.

(8) Said liquidators have paid nothing to the plaintiff on account of the earned premium so actually paid by him on said dues, and have thus far declined so to do, on the ground that the plaintiff was not entitled to be repaid the same."

The main contention of appellee is that appellant was legally powerless to issue shares of stock, except on periodical installments not to exceed two dollars per share, citing section 6 of the Act of 1879.

In 1894, when Catherine Brown surrendered her 13 shares of stock it was provided by section 6 of the act of 1879, then in force, "New shares of stock may be issued in lieu of shares withdrawn or forfeited." Hurd's Rev. Stat. 1889, p. 364. In September, 1898, when appellee purchased the 24 shares, including the 13 surrendered by Catherine Brown, the law then in force provided: "All shares which have matured, or which shall have been cancelled, withdrawn, or retired, may be reissued as of a subsequent date or series." Hurd's Rev. Stat. 1903, p. 492, parag. 83.

The association having power to reissue the shares, if there was any irregularity in reissuing them, the question is whether the appellee is in a position to complain of the ir-

regularity. In National Home Building Ass'n v. Bank, 181 Ill. 35, 44, the court say: "When an act is not *ultra vires,* for want of power in the corporation, but for want of power in the agent or officer, or because of the disregard of formalities which the law requires to be observed, or is an improper use of one of the enumerated powers, it may be valid as to third persons." The appellant had ample power to reissue the shares, and if there was any abuse of the power, this cannot be availed of by appellee, but only by the State, in a direct proceeding, instituted for that purpose. Daniels v. Belvidere Cem. Ass'n, 96 Ill. App. 387; Rector v. Hartford Deposit Co., 190 Ill. 381.

It is stipulated that the facts narrated in the stipulation are true, and it appears in sections 4 and 5 of the stipulation that appellant's secretary estimated the amount of dues which would have been paid on the 24 shares of stock, had the shares been issued, when the 12th series was opened for sale and regular payments made thereon till September, 1898, and that the same amounted to $1,356, and that the premiums earned during that time would have been $678.48; that the total of said sums, $2,034.48, was paid by the appellee for the shares, and was the withdrawal value thereof, and that the premium which would have been earned, $678.48, was apportioned among all existing shares of the series, including the 24 shares purchased by appellee.

It being admitted that the sum of $1,356 would have been the amount of regular payments made for the shares from the time they were originally for sale till September, 1898, when appellee purchased them, and that the amount of premiums such payments would have earned is $678.48, the financial situation, as between appellee and the association, when he paid for and received the shares, was precisely what it would have been had he purchased them when they were first offered for sale, and, in the interval between the time they were first offered and the date of his purchase, he had the use of the purchase money. Under these circumstances, how can it be claimed that appellee was in any way preju-

diced by the fact that he did not pay for the shares in installments of fifty cents per share monthly, or $12 per month, instead of paying for them as he did? Suppose that appellee had purchased the 24 shares at the time the 12th series was opened for sale, and that the association, having confidence in his solvency and responsibility, had allowed him credit from time to time till September, 1898, for the payments due on his shares, and he had then paid. He would have been required to pay the same amount which he paid for the shares in question. Is it not plain that, however irregular the action of the company, in so crediting him, may have been, he could not be heard to complain of the irregularity? The case supposed and the present case are the same in principle. Appellee did not pay the money for the shares by reason of any compulsion, but voluntarily, and, therefore, he cannot recover it. County of LaSalle v. Simmons, 5 Gilm. 513, 517; Walser v. Board of Education, 160 Ill. 272, and cases cited.

Appellee, as shown by section 4 of the stipulation, applied to the association to purchase the shares in question, the secretary of the association figured up their value, and appellee paid it, no doubt thinking that he was making a good bargain. Counsel for appellee says, in his argument, that it is averred in the declaration that appellee did not know that the shares had been surrendered till December, 1902. It is hardly necessary to say that the declaration is not evidence. There is nothing in the stipulation of facts on which the cause was tried tending, in the least, to prove that appellee did not know all the facts in regard to the shares. The action to recover money paid by the plaintiff to the defendant is an equitable action, and only lies when, in equity and good conscience, the defendant should repay the money. Taylor v. Taylor, 20 Ill. 650; Watson v. Woolverton, 41 Ib. 241.

Neither equity nor good conscience requires that the money in question should be returned to the appellee. Appellee contends that it does not appear from the bill of exceptions that it contains all the evidence. The bill of ex-

ceptions contains the stipulation, in which it is recited that the case may be considered by the court on the agreed facts. The contention is untenable.

The suit was commenced January 8, 1903, after the stockholders at a meeting held May 14, 1900, had, by vote, placed the association in liquidation. Appellee attended that meeting and voted his 24 shares, and not only so, but has, since that time, accepted dividends on his shares aggregating not less than 60 per cent of the amount of the dues paid by him on the shares. Having thus acted, we think he is estopped to sue for the money in question. Had the association prospered, there can be no doubt that it would never have been troubled with this suit.

The judgment will be reversed, appellant to recover its costs of this and the Superior Court of Cook county.

*Reversed.*